**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| ANDREW J. MALCOLM, | ) | |
| | ) | No. 2:08-cr-00232-DCN-1 |
| Petitioner, | ) | No. 2:12-cv-00079-DCN |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

This matter comes before the court on petitioner Andrew J. Malcolm's ("Malcolm") motion to vacate judgment and sentence pursuant to 28 U.S.C. § 2255, as well as the government's motion to dismiss or, in the alternative, for summary judgment. For the reasons set forth below, the court grants the government's motion for summary judgment, denies Malcolm's motion for summary judgment, and denies a certificate of appealability.

## I. BACKGROUND

On November 8, 2007, a South Carolina Highway Patrol officer stopped petitioner Andrew Malcolm for swerving his 18-wheeler into the emergency lane of Interstate 95. Pet. for Relief ¶ 1. Malcolm gave the officer his driver's license and his trucking log book.[1] Id. The officer issued Malcolm a warning and simultaneously asked for and received consent to search Malcolm's truck. Id. The officer discovered a large quantity of methamphetamine in the sleeper cab of the truck and as a result, arrested Malcolm. Id.

---

[1] A log book "records a truck's route, when it stopped, where it stopped and for how long." Pet. for Relief ¶ 7.

On March 11, 2008, a grand jury indicted Malcolm for knowingly, intentionally, and unlawfully importing 50 grams or more of methamphetamine from Canada pursuant to 21 U.S.C. §§ 952(a), and 960(b)(1)(H) as well as possessing methamphetamine with the intent to distribute pursuant to 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) . Id. at ¶ 10. Prior to trial, Malcolm moved to suppress evidence that another trucker who drove for Malcolm's employer had been previously arrested on separate drug charges. Id. The court denied that motion. Id.

Malcolm also moved to suppress his trucking log book, "which was seized . . . at the time of the Defendant's arrest," Id. at ¶ 6, because the government never provided him with a copy of the logbook in discovery. Id. The government informed Malcolm and the court that it had no intention of offering the evidence. Id.

Malcolm's trial began on January 26, 2009. At trial, the government called a number of law enforcement officers who testified that Malcolm admitted to transporting the drugs from Canada in an attempt to deliver them to a person known as "J" in Florida. Id. at ¶¶ 3, 9. After two days, a jury found Malcolm guilty on both counts of the indictment. On July 24, 2009, the court sentenced him to 292 months in prison. The Fourth Circuit affirmed the verdict on September 9, 2010. United States v. Malcolm, 394 F. App'x 964 (4th Cir. 2010), cert. denied 131 S. Ct. 957 (2011).

On January 6, 2012, Malcolm filed the instant motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. The government responded on March 23, 2012 with a motion to dismiss or, in the alternative, for summary judgment. The matter has been fully briefed and is ripe for the court's review. [2]

---

[2] In deciding a § 2255 petition, the court shall grant a hearing, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28

## II.  STANDARDS

With the assistance of counsel, petitioner proceeds under 28 U.S.C. § 2255, which

provides in relevant part:

> A prisoner in custody under sentence of a court established by Act of
> Congress claiming the right to be released upon the ground that the
> sentence was imposed in violation of the Constitution or laws of the
> United States, or that the court was without jurisdiction to impose such
> sentence, or that the sentence was in excess of the maximum authorized by
> law, or is otherwise subject to collateral attack, may move the court which
> imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).  Malcolm, as the petitioner, must prove the grounds for collateral

attack by a preponderance of the evidence.  See King v. United States, No. 05-0218, 2011

WL 3759730, at *2 (D.S.C. Aug. 24, 2011) (citing Miller v. United States, 261 F.2d 546,

547 (4th Cir. 1958)).

If, on a motion to dismiss, the court considers matters outside of the pleadings,

such as a party's supporting memoranda and attachments, the court treats the motion as

one for summary judgment.  Fed. R. Civ. P. 12(d).  "The court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (2010).  At

the summary judgment stage, the court must view the evidence in the light most

favorable to the non-moving party and draw all justifiable inferences in its favor.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Because, in this case, the

court considers matters outside the pleadings, it treats the government's motion as one for

summary judgment.

---

U.S.C. § 2255(b).  The court has reviewed the record in this case and has determined that a
hearing is not necessary.

# III.  DISCUSSION

Malcolm raises five grounds for relief under Section 2255.  He alleges four separate incidents of ineffective assistance of trial counsel, as well as a conflict of interest between his trial counsel and this court.

## A.  Ineffective Assistance of Trial Counsel

Malcolm alleges that his trial counsel provided ineffective assistance by: (1) not introducing Malcolm's cell phone records into evidence; (2) not presenting evidence that another driver for Malcolm's former employer had been previously arrested for trafficking narcotics; (3) failing to obtain Malcolm's logbook; and (4) failing to call a forensic expert as a defense witness.

The Sixth Amendment to the United States Constitution guarantees the accused the right to the assistance of counsel for his defense.  The "right to counsel is the right to the effective assistance of counsel."  McMann v. Richardson, 397 U.S. 759, 771 (1970). In order to establish a claim of ineffective assistance of counsel, a petitioner must satisfy a two-prong test.  Strickland v. Washington, 466 U.S. 668, 687 (1984); Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992).

The first prong, known as the performance prong, places the burden of proving counsel's representation fell below "an objective standard of reasonableness" on the petitioner.  Strickland, 466 U.S. at 688.  In evaluating the performance prong, the court maintains "a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance" based "on the facts of the particular case, viewed as of the time of counsel's conduct."  Id. at 689-90.  It is well settled that "once counsel conducts a reasonable investigation of law and facts in a particular case, his strategic

decisions are 'virtually unchallengeable,'" and that a trial counsel's "reasonable

professional judgments are not deficient." Powell v. Kelly, 562 F.3d 656, 670 (4th Cir.

2009) (quoting Strickland, 466 U.S. at 690); see also Harrington v. Richter, 131 S. Ct.

770, 790 (2011) ("There is a strong presumption that counsel's attention to certain issues

to the exclusion of others reflects trial tactics rather than sheer neglect") (internal quotes

omitted).

     The second prong, known as the prejudice prong, requires a petitioner to show

"that there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A

reasonable probability is a probability sufficient to undermine confidence in the

outcome." Id. Thus, "[t]he benchmark for judging any claim of ineffectiveness must be

whether counsel's conduct so undermined the proper functioning of the adversarial

process that the trial cannot be relied on as having produced a just result." Id. at 686. A

court may always begin with the prejudice prong if it desires, and if a petitioner does not

meet his burden of satisfying it, then the "reviewing court need not consider the

performance prong." Fields, 956 F.2d at 1297. Additionally, "a fair assessment of

attorney performance requires that every effort be made to eliminate the distorting effects

of hindsight." Strickland, 466 U.S. at 689.

     Naturally, the more overwhelming the evidence pointing to the petitioner's guilt,

the harder it is for the petitioner to show prejudice. Eaton v. Angelone, 139 F.3d 990,

994 (4th Cir. 1998) (holding no ineffective assistance of counsel where counsel allegedly

presented an inadequate case, failed to investigate exculpatory evidence, and failed to

admit mitigating evidence during the sentencing phase); see also Bray v. Cason, 375 F.

App'x 466, 470-72 (6th Cir. 2010) (ruling counsel's failure to call informant as a witness in drug possession trial did not prejudice where defendant confessed and officers testified that he possessed three-and-a-half kilograms of cocaine when arrested); United States v. Harden, 846 F.2d 1229, 1231-32 (9th Cir. 1988) (finding petitioner not prejudiced despite trial counsel's omission of evidence where overwhelming evidence pointed towards petitioner's guilt). Furthermore, a petitioner must show a substantial, not just conceivable, likelihood that a different result would have occurred but for counsel's omissions. Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011).

**1. Trial counsel's failure to introduce Malcolm's cell phone records.**

Malcolm first argues that counsel's failure to introduce his business cell phone records into evidence constitutes ineffective assistance because the records would have been exculpatory. Malcolm claims that his cell phone records would have shown the jury he "was merely engaged in the lawful transport of cargo pursuant to his occupation." Pet'r's Mem. in Supp. of § 2255 Pet. 5.

Contrary to Malcolm's assertions, his cell phone records are not clearly exculpatory. Malcolm's phone records for November 8, 2007 indicate that Malcolm made a 47 second outgoing phone call to "J" at 12:21 p.m. and that "J" made a 30 second phone call to Malcolm at 12:23 p.m. Pet. for Relief ¶ 19. The cell phone records do not reflect the substance of the phone calls, and the sequence of the calls tends to undermine Malcolm's assertion that he simply returned a missed call. In addition, Malcolm's trial testimony was highly inconsistent with regard to phone calls made on the day of his arrest. Trial Tr. vol. 2, 62-63, 97-100, 122-125, Jan. 27, 2009. On direct examination, Malcolm did not admit calling a person named "J" in Florida on November, 8, 2007. Id.

at 62-63.  However, on cross-examination, he variously claimed he did not recall whether he made those calls, he probably did make those calls, he might have called the number, and that he could not remember.  Id.  97-100.  On redirect examination, Malcolm again claimed he did not remember who he called that day but then stated he returned missed calls.  Id. at 123.  Finally, on re-cross-examination, Malcolm stated his memory had improved over a break in the proceedings and claimed he did not recall if he answered the phone when it rang but he did recall returning missed calls to a person in Florida.  Id. 122-25.

Malcolm's trial counsel aptly recognized that Malcolm's cell phone records were "inconsistent with [Malcolm's] recollection" and "did not support his defense."  Aff. of Andrew Savage, III and Lauren Williams ¶ 6.  Malcolm's cellphone records harm his credibility, undermine his argument, and do not conclusively establish anything beyond the time a call was dialed and terminated.  Therefore, trial counsel's decision to omit the records from evidence was a reasonable decision and was not ineffective assistance.  As a result, Malcolm's first claim fails.

### 2.  Trial counsel's failure to enter evidence of another employee's arrest.

Next, Malcolm argues his trial counsel erred by not introducing "evidence concerning the fact another trucker for [his] employer had been arrested for ecstasy trafficking," which he claims "is clearly exculpatory because it provides a likely source of drugs found in the truck."  Pet'r's Mem. 8-9.

As with Malcolm's cell phone records, this evidence is not clearly exculpatory. This evidence could just as easily have been interpreted by the jury to show "the company was involved in a pattern of drug smuggling, using its drivers to distribute

drugs in the U.S." Resp't's Mem. in Supp. of Mot. for Summ. J. 7. Thus, it was

objectively reasonable for Malcolm's trial counsel to prevent jurors from hearing this

potentially prejudicial information. Furthermore, even if omitting the evidence

constituted deficient performance on the part of trial counsel – which it does not –

Malcolm's claim still fails as to the prejudice prong. The government did not need to

establish that Malcolm placed the drugs in his truck. Rather, it only needed to show that

Malcolm knowingly transported the drugs from Canada to the United States. Malcolm

has not demonstrated that his attorneys' failure to enter evidence of another trucker's

drug trafficking conviction prejudiced the outcome of his case.

Because evidence of another employee's arrest for drug smuggling could have

damaged Malcolm's case, trial counsel performed reasonably, and it is not substantially

likely the outcome would have been different but for the evidence's omission.

Malcolm's second ineffective assistance claim also fails.

### 3. Trial counsel's failure to obtain Malcolm's trucking log book.

Malcolm submits that his trial counsel's inability to obtain his trucking log book

as the third way in which counsel rendered ineffective assistance. Pet'r's Mem. 11.

According to Malcolm, the log book would have impeached Trooper English's testimony

and corroborated his own. Id. at 11-14. Malcolm also contends that the government's

prevention of its admittance into evidence was a violation of his due process rights. Id. at

12-13; Pet'r's Reply 7.

The Fourth Circuit has already addressed Malcolm's arguments in the context of

his direct appeal, stating: "Malcolm fails to establish that the logbook was clearly

exculpatory, or that the Government acted in bad faith" when it failed to produce his log

book.  United States v. Malcolm, 394 F. App'x 964, 968 (4th Cir. 2011).  The Fourth
Circuit's analysis remains apt.  Malcolm has failed to show the exculpatory value of the
logbook and cannot demonstrate that the result of his trial would have been different but
for its omission.  See Cullen, 131 S. Ct. at 1403.  Therefore, Malcolm's third ineffective
assistance claim fails both Strickland's  performance and prejudice prongs.

### 4.  Trial counsel's refusal to call an available defense witness.

Malcolm argues that trial counsel rendered ineffective assistance by failing to call
an available expert defense witness who could testify about police forensic procedures.
Pet'r's Mem. 14.  Malcolm asserts that the witness, a former state forensic investigator,
would have testified that "the police should have taken fingerprints and DNA evidence
from the packages recovered from the truck," and that their failure to do so cast "doubt
on the veracity of the police investigation."  Id.  Malcolm claims the witness's testimony
"would have helped demonstrate that Malcolm had no knowledge of the packages found
inside the vehicle."  Id.

It is difficult to overcome the presumption that trial counsel's decision to keep a
witness from testifying was unreasonable because '"the decision whether to call a defense
witness is a strategic decision' demanding the assessment and balancing of perceived
benefits against perceived risks, and one to which '[the court] must afford . . . enormous
deference.'"  United States v. Terry, 366 F.3d 312, 317 (4th Cir. 2004) (quoting United
States v. Kozinski, 16 F.3d 795, 813 (7th Cir. 1994)).  Furthermore, demonstrating
prejudice is inherently difficult when an absent witness's testimony would merely have
been cumulative.  See Mantzke v. Province, 351 Fed. App'x 293, 295 (10th Cir. 2009)
(ruling attorney was not deficient for failing to call witness where witness's testimony

would be cumulative and defendant faced large amount of evidence pointing towards his guilt); United States v. Harris, 408 F.3d 186, 191 (5th Cir. 2005) ("This Court has previously refused to allow the omission of cumulative testimony to amount to ineffective assistance of counsel."); United States v. Stokes, 64 Fed. App'x 585, 592 (7th Cir. 2003) (ruling trial counsel was effective despite not calling defendant's ex-wife as a witness, since her testimony was largely cumulative of testimony elicited through investigating officers who already testified); United States v. Schaflander, 743 F.2d 714, 718 (9th Cir. 1984) (holding trial counsel was not deficient where it failed to call defense witnesses who would have presented exculpatory testimony that would have been cumulative).

Malcolm admits that the government's law enforcement witnesses testified to the particular shortcomings of the police investigation. See Pet'r's Reply 7-9. Furthermore, Malcolm concedes the defense witness "[p]resumably . . . would have corroborated evidence" which had been established during cross-examination of the investigators. Id. at 9. The available defense witness's expert testimony would have been, by Malcolm's own admission, cumulative evidence. The defense expert would not have testified to any information other than the information law enforcement officers already conceded. Thus, the cumulative nature of the expert testimony prevents Malcolm from establishing prejudice, and as a result Malcolm's fourth claim fails.[3]

---

[3] It is also important to note that it is unlikely that any of trial counsel's alleged errors, discussed above, would have created a different result. Courts have repeatedly held that an attorney's errors will not be considered constitutionally deficient when the overwhelming evidence indicates a defendant's guilt. Meyer v. Branker, 506 F.3d 358,372-73 (4th Cir. 2007) (ruling trial counsel's failure to present mitigation testimony at capital sentencing hearing did not prejudice defendant where state possessed overwhelming evidence of defendant's crimes and two previous sentencing juries had heard testimony and sentenced defendant to death.); Haynes v. Cain, 272 F.3d 737, 762 (5th Cir. 2001) (finding trial counsel's questions implicating his client's

## B. Counsel's Failure to Withdraw Despite an Alleged Conflict of Interest.

As a fifth claim, Malcolm argues that his trial counsel was ineffective by not withdrawing despite this court's role as godfather to one of trial counsel's children. Although trial counsel informed Malcolm of this existing relationship, Malcolm now insists that the "pseudo-family relationship" between his attorney and the court presented an unwaivable conflict of interest. Pet'r's Reply 10; Pet'r's Mem. 17.

In order to prevail on an actual conflict of interest claim, a defendant must prove "that (1) [his] lawyer operated under a 'conflict of interest' and (2) such conflict 'adversely affected his lawyer's performance.'" United States v. Nicholson, 611 F.3d 191, 195 n.2 (4th Cir. 2010) (quoting Cuyler v. Sullivan, 446 U.S. 335, 348 (1980)). When these two elements are proven, prejudice is presumed. Strickland, 466 U.S. at 692. However, an "[a]dverse effect cannot be presumed from the mere existence of a conflict of interest." Rubin v. Gee, 292 F.3d 396, 401 (4th Cir. 2002). In order to establish an adverse effect, a petitioner must show: (1) that his trial counsel might have pursued a plausible alternative defense strategy; (2) that the strategy was objectively reasonable under the facts; and (3) that trial counsel's failure to pursue that strategy was linked to the actual conflict. Mickens v. Taylor, 240 F.3d 348, 361 (4th Cir. 2001). See also Chandler

---

guilt and closing statement conceding overwhelming evidence of guilt were not prejudicial in light of the negative overwhelming evidence); Reed v. Norris, 195 F.3d 1004, 1006 (8th Cir. 1999) ("We find it unnecessary to discuss the reasonableness of counsel's conduct because, given the overwhelming evidence of guilt presented at trial, we find that it would be impossible for him to demonstrate prejudice under Strickland."); Eaton v. Angelone, 139 F.3d 990, 994-95 (4th Cir. 1998) (holding counsel's alleged errors, including inadequate investigation, mishandled jury selection, and failure to raise various objections, did not prejudice defendant in view of overwhelming evidence of guilt). The large quantity of drugs located in the sleeping compartment of Malcolm's truck is damning evidence, as is his admission to a state highway patrol officer that the drugs had been given to him in Canada and he was taking them to a person named "J" in Florida. Trial Tr., vol. 1, 108:3-23, Jan. 26, 2009. Malcolm's inconsistent statements in court were likely detrimental as well. Therefore, Malcolm's first four grounds of ineffective assistance fail the prejudice prong of the Strickland test.

v. Lee, 89 F. App'x 830, 839-41 (4th Cir. 2004) (finding no conflict of interest where defense co-counsel previously represented prosecution's key witness); Rubin v. Gee, 292 F.3d 396, 404-07 (4th Cir. 2004) (finding a conflict of interest and ineffective assistance of counsel where "the lawyers' desire to secure a $105,000 retainer fee" caused them to improperly counsel their client and to delay her surrender to police); Fullwood v. Lee, 290 F.3d 663, 688-89 (4th Cir. 2002) (finding no conflict where defendant's trial counsel worked as an assistant district attorney during defendant's resentencing where the lawyer did not participate in the proceeding); McCuin v. Texas Power & Light Co., 714 F.2d 1255, 1264-65 (5th Cir. 1983) (finding recusal appropriate where trial judge's brother-in-law represented defendants); United States v. Sellers, 566 F.2d 884, 886-87 (4th Cir. 1977) (finding no conflict of interest where trial judge held stock in a bank that was robbed and where trial judge's brother was the bank's CEO).  In addition, 28 U.S.C. §455(b)(5) requires a federal judge to recuse himself  where "he or his spouse, or a person within the third degree of relationship to either of them, or such a person . . . is acting as a lawyer in the proceeding."  The statute does not require judicial recusal when a judge's friend or acquaintance acts as a lawyer in the proceeding.

In a futile attempt to gin up a viable conflict of interest claim, Malcolm lists a series of hypothetical situations – ranging from silly to wildly inappropriate – that could have led to personal disagreements between the court and Malcolm's trial counsel. Malcolm does not point to any specific action or inaction resulting from trial counsel's connection with the court.  Pet'r's Mem. 17-18.  Nor does Malcolm explain how his trial was "permeated" with prejudice "due to trial counsel's relationship with the judge."  Id. at 18.  Because Malcolm fails to show either an actual conflict of interest or that such a

conflict adversely impacted his lawyer's performance, Malcolm's final claim of ineffective assistance fails.

## IV.   CONCLUSION

As a result of the before mentioned reasons, Malcolm's trial counsel performed reasonably and offered effective assistance at every stage of the proceedings.  Therefore, the court **DENIES** Malcolm's §2255 petition, and the court **GRANTS** the government's motion for summary judgment.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** because petitioner has failed to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**July 30, 2013**
**Charleston, South Carolina**